UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Shannon Miller,

Plaintiff,

vs.

The Board of Regents of the
University of Minnesota,

Defendant.

Case No. 15-CV-03740 (PJS/LIB)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND NONTAXABLE COSTS**

---

## INTRODUCTION

On March 15, 2018, after an eight-day trial, a jury returned a verdict in favor of Plaintiff Shannon Miller ("Miller") and against Defendant Board of Regents of the University of Minnesota ("Defendant") on Title-IX retaliation and Title-VII discrimination[1] grounds. (ECF No. 569.) When liability is established under Title VII and Title IX, the prevailing party is entitled to recover her reasonable attorneys' fees. As the prevailing party, Miller is entitled to recover her reasonable attorneys' fees and nontaxable costs for legal services performed by her counsel, Siegel, Yee, Brunner & Mehta ("SYBM") and Fafinski Mark & Johnson P.A. ("FMJ").

This case was hard-fought, and the work required by SYBM and FMJ to prevail at trial was extensive and involved. The SYBM and FMJ law firms took Miller's case on a

---

[1] The jury concluded Miller's sex was a motivating factor in Defendant's decision not to offer her a new employment contract. (ECF No. 569 at ¶ 1.) The jury also found Defendant would have decided not to offer Miller a new employment contract regardless of her sex. (*Id.* ¶ 2.)

contingency fee basis, which has involved over three years of litigation, trial and post-trial work. Both firms bore a risk of no recovery for the hours they poured into this case. Both firms clearly showed the court they were extremely skilled attorneys and were able to win a difficult case with excellent results. For these reasons, Miller respectfully requests this Court award Miller's counsel their reasonable attorneys' fees and non-taxable costs with a 2.0 multiplier as set forth in detail below.

## STATEMENT OF FACTS AND PROCEEDINGS

### A. Miller's Claims & Results Obtained

Miller filed this action against Defendant on September 28, 2015. She asserted a fee-bearing claim pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and retaliation under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* for discrimination and retaliation.

After seven days of trial, the jury reached a unanimous verdict in favor of Miller and awarded her substantial damages for Defendant's Title IX violations. Miller requested, and the jury awarded $744,832 for lost past wages and benefits and $3,000,000 for other past damages. (ECF No. 616.) Following the jury trial, on February 3, 2019, the Court granted in part and denied in part Miller's motion for reinstatement or front pay, granting Miller an additional $461,278 in front pay and future benefits loss damages. (*Id.*) In total, Miller was awarded $4,206,110 for UMD's Title IX violations. (*Id.*)

### B. Miller's Counsel's Rates are Reasonable Given Their Experience.

The hours and rates of the attorneys and paralegals of SYBM are reasonable. SYBM, located in Oakland, California are experts in Title VII and Title IX cases. (Affidavit[2] of Dan Siegel ("Siegel Aff."), ¶¶ 2-16, 22.) Dan Siegel's hourly rate of $750, in light of his 47 years of experience and success at trial, is reasonable. (*Id.*) The hourly rates of $550 for partner Jane Brunner and Anne Weills, of counsel, are also reasonable in light of Brunner's 30 years of experience and Weills' 30 years of experience and trial success. (Affidavit of Jane Brunner ("Brunner Aff."), ¶¶ 2-15, 26; Declaration of Anne Weills ("Weills Dec."), ¶¶ 2-16.) Former SYBM associate attorney Jalle Dafa's hourly rate of $400 is warranted because she handled many important aspects of the case, including working on the complaint and motions. (Affidavit of Jalle Dafa ("Dafa Aff."), ¶¶ 2-9, 13.) Elizabeth Johnson's paralegal hourly rate of $250 is also reasonable, in light of her 25 years of experience. (Affidavit of Elizabeth Johnson ("Johnson Aff."), ¶¶ 2-9.) Former SYBM paralegal Micah Clatterbaugh's hourly rate of $200 for this matter is also reasonable given his level of experience. (Affidavit of Micah Clatterbaugh ("Clatterbaugh"), ¶¶ 1-8.)

The hours and rates of the attorneys of FMJ, located in Eden Prairie, Minnesota are also reasonable. Donald Chance Mark Jr.'s hourly rate range of $370-395 for the years 2015-2019 is reasonable in light of his 45 years of extensive jury trial experience and successes. (Declaration of Donald Chance Mark, Jr. ("Mark Decl."), at ¶¶ 1-3, 7 Exs.

---

[2] All Declarations and Affidavits cited herein have been filed contemporaneously with this Memorandum.

B.) The hourly rate range of $265-320 for Andrew T. James, an associate attorney with eight years of experience who was extensively involved with discovery and the trial of this matter, is also reasonable. (Declaration of Andrew T. James ("James Decl."), at ¶¶ 2-4, Ex. B.) The hourly rate range of $370-385 from 2016-2018 for Sharon L. Van Dyck, of counsel to FMJ, based on her over 30 years of litigation experience and her special expertise in complex motion practice, is also reasonable.[3] (Declaration of Sharon L. Van Dyck ("Van Dyck Decl."), at ¶¶ 1-8, 15, Ex. A.) The range of hourly rates of $265-345 from 2015 to 2019 for shareholder for Tyler P. Brimmer is reasonable based on his years of experience.  (Declaration of Tyler P. Brimmer ("Brimmer"), at ¶ 2, 6, Ex. A.) The hourly rate range of $245-305 associate Christopher Sall is also reasonable given his years of experience. (Declaration of Christopher R. Sall ("Sall Decl."), at ¶¶ 2, 5, Ex. A.) The hourly rate range of $240-275 for 2017-2018 for FMJ associate Jenny Helling Fuller is reasonable given her years of experience. (Declaration of Jenny Helling Fuller ("Fuller Decl."), at ¶¶ 1-2, 5, Ex. A.)  The hourly rate range of $195-205 from 2015-2018 an hour is reasonable for Kelly A. Schroeder, former FMJ paralegal, given her years of experience. (Declaration of Kelly A. Schroeder ("Schroeder Decl."), at ¶¶ 2, 5, Ex. A.) The hourly rate of $220 an hour is reasonable for Yvonne M. Viehman, paralegal, given her years of experience. (Declaration of Yvonne M. Viehman ("Viehman Decl."), at ¶¶ 1, 4, Ex. A.) Finally, Shanna Boomgaarden and Sherri DeBettignies, legal assistants at FMJ

---

[3] Since January 1, 2019, Sharon Van Dyck no longer works at FMJ but remains associated with FMJ for purposes of representing Miller, and has billed her time on the above-captioned matter through her law firm, Van Dyck Law Firm at a reasonable hourly rate of $395. (Van Dyck Decl. ¶ 17.)

4

that occasionally perform paralegal services, have a reasonable paralegal rate of $200. (Mark Decl., ¶ 7.)

### C. This Factually Complex Case Required an Enormous Amount of Work by SYBM and FMJ.

As the Court is aware, this case was hard-fought. As set forth in further detail below, it has involved voluminous discovery, complex factual disputes, interviews and depositions of dozens of witnesses, the production of thousands of documents, extensive motion practice, an eight-day trial and numerous post-trial motions, which continue.

*Pre-trial*

Miller's attorneys spent time before the action was filed, interviewing the client and other witnesses, investigating the facts and law and preparing the initial pleadings. (Weills Dec., ¶ 17, Ex. A; Dafa Aff., ¶¶ 10-13, Ex. A.)

*Discovery*

The review of documentation provided by the defendant constituted a significant portion of the discovery conducted by SYBM. Brunner and Johnson reviewed and indexed over 17,000 pages of documents produced by the defense in approximately 20 separate installments. (Brunner Aff., ¶ 18; Johnson Aff., ¶¶ 9-10, Ex. A.) FMJ was required to review these documents and written discovery as well as the two firms split the work related to the taking of depositions, which required both firms to have knowledge related to the facts, witnesses, and key issues in the case. (Mark Decl., ¶ 13; Siegel Aff., ¶ 19.) Discovery also involved propounding and responding to numerous discovery requests. (Johnson Aff., ¶ 9.)

SYBM and FMJ prepared for and took 12 depositions of witnesses in Duluth, one in South Dakota, and defended three depositions taken by the defense, with 338 documentary exhibits marked. (Siegel Aff., ¶ 19; Brunner Aff., ¶ 17; Mark Decl, ¶ 13.)

*Motion Practice*

The case further involved extensive motion practice beginning in discovery continuing through post-trial. Miller's attorneys prepared, drafted and argued a motion to compel discovery, a motion to compel the deposition of David Goldberg, and a motion in limine. (Brunner Aff., ¶¶ 19, 21.) Miller's counsel also had to defend against many motions brought by Defendant, including a motion to compel discovery, motions for summary judgment, a motion to exclude the expert witness testimony of Dr. Donna Lopiano, a motion for separate trials, a motion to quash, seven joint motions regarding continued sealing and exhibits, and motions in limine. (Brunner Aff., ¶¶ 19-21; Van Dyck Decl., ¶ 10.) The work preparing to respond to the motions for summary was involved, and required a review of the written discovery and documents produced by both parties along with the depositions. (Van Dyck Decl., ¶ 11.)

*Trial Preparation*

Trial preparation was extensive. It involved the copious work of Johnson and James who compiled 34 detailed witness files. (Johnson Aff., ¶¶ 9-10, Ex. A; Mark Decl., ¶ 13.) FMJ prepared numerous pre-trial filings, including jury instructions, the special verdict form, Miller's motion in limine, and opposition to defendant's motions in limine. (Van Dyck Decl., ¶ 11.) Johnson, Brunner and Siegel spent a significant amount of time reviewing documents to identify trial exhibits and prepared the exhibit list and

witness list, as did FMJ's counsel. (Siegel Aff., ¶ 23, Ex. B; Johnson Aff., ¶¶ 9-10, Ex. A; Van Dyck Decl., ¶ 11; Mark Decl., ¶ 13.) Counsel also spent significant time formulating trial strategy on a variety of issues, drafting direct and cross examination outlines, and personally meeting with witnesses. (Mark Decl. ¶ 13; Brunner Aff., ¶ 22.)

*Trial*

Trial in this matter commenced on March 6, 2018, and concluded with a unanimous jury verdict on March 15, 2018. (Brunner Decl., ¶ 23.) Twenty-seven witnesses testified, and numerous complex legal and evidentiary issues arose through the trial which needed to be addressed with the Court. (Brunner Aff., ¶ 23; Mark Decl., ¶ 13.) SYBM and FMJ rented accommodations in Duluth and worked every morning and evening in preparation for trial. (Brunner Aff., ¶ 24; Van Dyck Decl., ¶ 12.) They also worked weekend days before and during the trial preparing exhibits, witnesses, and to address legal and factual issues that needed to be addressed with the Court. (Id.; Mark Decl., ¶ 13.)

*Post-Trial*

Following trial, Miller's counsel has prepared and filed a motion for reinstatement or front pay, a motion to amend the judgment, a bill of costs, and this fee petition. (Van Dyck Decl., ¶ 13; Mark Decl., ¶ 13.) Defendant has filed a motion for renewed judgment as a matter of law, a new trial, or remittitur, which Plaintiff is responding to. (Mark Decl., ¶ 13.)

Miller has submitted detailed confidential billing records in support of the instant motion for the *limited* purpose of allowing the Court and Defendant's counsel fair

7

opportunity to assess the reasonableness of the time expended on the case as is required by such a motion. Miller does not, however, waive her attorney-client privilege or work product protection with respect to the contents of these billing records nor does Miller condone the use of these records for any other purpose.

## ARGUMENT

### I. THE COURT SHOULD AWARD THE REQUESTED ATTORNEYS' FEES

Where liability is established under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, the prevailing plaintiff is entitled to reasonable attorneys' fees in civil rights litigations. *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S. Ct. 1933, 1937 (1983). Under 42 U.S.C. § 1988, the Court "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs," in any action, such as this one, to enforce a provision of Title IX. 42 U.S.C. § 1988(b); (ECF No. 1 ¶¶ 175-184 (asserting claim under Title IX).). Similarly, under Title VII of the Civil Rights Act of 1964, the Court, "in its discretion, may allow the prevailing party. . . a reasonable attorney's fee (including expert fees) as part of the costs . . ." 42 U.S.C. § 2000e-5(k); (ECF No. 1 ¶¶ 154-163 (asserting claim under Title VII).). It is undisputed that Miller is the prevailing party in this case. She prevailed on her Title IX retaliation claim and convinced the jury that she was a victim of gender discrimination.

The starting point for determining the amount of a reasonable attorney's fee involves calculating the "lodestar," which provides an initial estimate of the value of the attorney's service. *Hensley*, 461 U.S. at 433. The lodestar is the product of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly billing

rate. *Id.*

As addressed in further detail below, because the hourly rates of Miller's counsel are reasonable and counsel's time was reasonably expended and necessary for the proper representation of Miller, Plaintiff should be awarded the lodestar amount of her attorneys' fees, which amounts to $2,434,143.94 in total. (Dafa Decl., ¶ 11; Clatterbaugh Decl., ¶ 8; Weills Decl., ¶ 17; Johnson Decl., ¶ 9; Siegel Decl., ¶ 22; Brunner Decl., ¶ 27; Mark Decl., ¶ 5, Ex. A; Van Dyck Decl., ¶ ¶ 17, Ex. B.)

### A. Claimed Hours of Miller's Attorneys Are Reasonable

A successful plaintiff's counsel is entitled to recover attorneys' fees for all the hours reasonably spent. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Emery v. Hunt*, 272 F.3d 1042, 1047 (8th Cir. 2001) (quoting *Hensley*, 461 U.S. at 435).

Miller's attorneys seek compensation 5,352 attorney hours and 1,854.95 paralegal hours through March 31, 2019[4] as follows:

| Siegel, Yee, Brunner & Mehta | |
|---|---|
| Attorney Dan Siegel | 723.4 hours |
| Attorney Jane Brunner | 908.25 hours |
| Attorney Anne Weills | 138.80 hours |
| Attorney Jalle Daffa | 131.40 hours |
| Paralegal Elizabeth Johnson | 742.60 hours |
| Paralegal Micah Clatterbaugh | 9.35 hours |
| **Fafinski Mark & Johnson, P.A** | |

---

[4] As part of this fee petition, Miller's counsel seeks reimbursement for attorneys' fees and nontaxable costs incurred through March 31, 2019. Because Miller's counsel will continue to incur additional attorneys' fees and costs as a result of the ongoing post-trial proceedings, Miller respectfully requests leave of Court to file supplemental declarations with Miller's Reply detailing additional fees incurred on this matter through that date.

9

| | |
|---|---|
| Attorney Donald Chance Mark, Jr. | 806.1 hours |
| Attorney Sharon Van Dyck | 427.1 hours |
| Attorney Andrew James | 1000.4 hours |
| Attorney Tyler Brimmer | 114.7 hours |
| Attorney Christopher Sall | 324.7 hours |
| Attorney Jenny Helling Fuller | 17.2 hours |
| Paralegal Kelly Schroeder | 1006.4 hours |
| Paralegal Yvonne Viehman | 72.2 hours |
| Other Paralegal Work | 24.4 hours |
| **Van Dyck Law Firm** | |
| Sharon Van Dyck | 8.0 hours |

(Dafa Decl., ¶ 11; Clatterbaugh Decl., ¶ 8; Weills Decl., ¶ 17; Johnson Decl., ¶ 9; Siegel Decl., ¶ 22; Brunner Decl., ¶ 27; Mark Decl., ¶ 5, Ex. A; Van Dyck Decl., ¶ ¶ 17, Ex. B.)

These hours expended by Miller's attorneys in this case are reasonable in light of the extensive work the case required for a period of over three years, as set forth in detail above. *See supra*, p. 6-9. Further, Miller's counsel has already ensured that unnecessary or duplicative hours from these bills have been removed. FMJ accomplished this by having counsel review the billing records in detail and removing unnecessary or duplicative charges, which reduced FMJ's overall attorneys' fees by $17,417.50. (Mark Decl., ¶ 8; Brimmer Decl., ¶ 7, Van Dyck Decl., ¶ 16.) In the interest of eliminating duplications and unnecessary work, SYBM counsel has discounted its overall attorneys' fee sought by 5%, in the amount of $67,925.35.

### B. Miller's Attorneys' Claimed Rates Are Reasonable

The term reasonable hourly rate has been defined as the "hourly amount to which attorneys in the area would typically be entitled for a given type of work on the basis of an hourly rate of compensation." *Avalon Cinema Corp. v. Thompson*, 689 F.2d 137, 140

(8th Cir. 1982) (internal citations omitted). However, "[t]his does not mean that out-of-town counsel must always be limited to lower rates. It may not always be possible to find counsel in or near the locality of the case that are able and willing to undertake difficult and controversial civil-rights litigation. If 'a plaintiff can show he has been unable through diligent, good faith efforts to retain local counsel, attorney's fees under 42 U.S.C. § 1988 are not limited to the prevailing rate in the district where the case is tried.'" *Id.* (internal citations omitted).

"[R]ates are not limited to those prevailing in a local community where those rates would not be 'sufficient to attract experienced counsel' in a specialized legal field." *Little Rock School Dist. v. Arkansas*, 674 F.3d 990, 997 (8th Cir. 2012) (quoting *Casey v. City of Cabool, Mo.*, 12 F.3d 799, 805 (8th Cir. 1993)). "To limit rates to those prevailing in a local community might have the effect of limiting civil rights enforcement to those communities where the rates are sufficient to attract experienced counsel." *Casey*, 12 F.3d at 805 (quoting *Hendrickson v. Branstad*, 740 F. Supp. 636, 642 (N. D. Iowa 1990). A national market or a market for a particular legal specialization may provide the appropriate market. *Little Rock School Dist.*, 674 F.3d at 997 (internal quotations omitted).

As set forth in further detail above, Miller's counsel rates are reasonable given their skill, experience and reputation. *See supra*, p. 6-9. SYBM specializes in Title IX cases. (Siegel Aff., ¶¶ 6, 8, 11, 12.) Mr. Siegel has extensive experience and success against colleges and universities especially under Title IX. Miller was not able to find an attorney in Duluth, Minnesota who had enough relevant experience to litigate her case

11

against UMD. (Declaration of Shannon Miller ("Miller Dec."), ¶¶ 2-4.) SYBM had specialized experience in gender discrimination and Title IX litigation and was particularly apt to represent Miller. (Siegel Aff., ¶¶ 2-16; Brunner Decl., ¶¶ 2-10; Weills Decl., ¶¶ 2-15.) Because Miller was not able to find an attorney in Minnesota with the requisite Title IX expertise, the Court should grant her attorneys the hourly rates that are reasonable in the San Francisco Bay Area. The hourly rate range of $400-750 sought by SYBM counsel are reasonable, as they are consistent with the rates Miller's lead counsel has received in cases tried over the years and consistent with the San Francisco Bay Area legal community. (Siegel Aff., ¶¶ 2-22; Brunner Aff., ¶ 26.)

FMJ's rates, the full-service Minnesota commercial law firm that SYBM partnered with to represent Miller, are also reasonable given their significant litigation and trial experience. Indeed, the rate of FMJ's lead counsel, Donald C. Mark, Jr., at only $395 is extremely reasonable given his successful career and years of experience trying over 100 jury trials in nine different states over the last 45 years. (Mark Decl., ¶ 2, Ex. B.) The rates of the other attorneys and paralegals at FMJ that worked on this matter, all less than $395, are also very reasonable and consistent with the prevailing market rates for legal professionals of comparable skill levels in the Twin Cities. *See Ewald v. Royal Norwegian Embassy*, No. 11-CV-2116 (SRN/SER), 2015 U.S. Dist. LEXIS 52540, at *17-18 (D. Minn. Apr. 13, 2015) (holding the hourly rates charged by the plaintiff's attorneys, including rates ranging between $345-410 for counsel and between $90-215 for paralegals, were reasonable and consistent with the Twin Cities legal market).

### C. Paralegal Hours Are Compensable

Reasonable attorneys' fees include compensation for the work of paralegals, as well as that of attorneys. *Missouri v. Jenkins*, 491 U.S. 274, 285, 109 S. Ct. 2463, 2470 (1989) (by encouraging the use of lower cost paralegals rather than attorneys wherever possible, permitting market-rate billing of paralegal hours encourages cost-effective delivery of legal services and, by reducing the spiraling cost of civil rights litigation, furthers the policies underlying civil rights statutes) (internal citations omitted).

FMJ and SYBM utilized the expertise and assistance of several experienced paralegals when possible in this matter. (Johnson Aff., ¶¶ 9-10, Ex. A; Mark Decl. ¶ 7.) The paralegal fees charged in this case are compensable under the law.

### D. All Hours Worked on Case Should Be Considered

Miller anticipates Defendant will argue that because Defendant partially succeeded on summary judgment that not all of the work performed by Miller's attorneys is compensable. However, "[t]he Supreme Court's admonition in *Hensley* to evaluate success in light of the whole case applies not just to different claims, but also to counsel's work in different stages of the case. Generally speaking, 'status as a prevailing party is determined on the outcome of the case as a whole, rather than by piecemeal assessment of how a party fares on each motion along the way.'" *Emery v. Hunt*, 272 F.3d 1042, 1047 (8th Cir. 2001) (citing *Jenkins v. Missouri*, 127 F.3d at 714, 717 (8th Cir. 1997). *See also Hensley*, 461 U.S. at 453 ("… [t]he fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in a lawsuit . . . [l]itigants in good faith may raise alternative legal grounds for a desired outcome, and

the court's rejection of or failure to reach certain grounds is not sufficient reason for reducing a fee. The result is what matters.")

"Where a plaintiff obtains partial success but her claims involve a common core of facts or are based on related legal theories, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Ewald*, 2015 U.S. Dist. LEXIS 52540 at *53 (citing *Hensley*, 461 U.S. at 435). *See also Wal-Mart Stores, Inc. v. Barton*, 223 F.3d 770, 773 (8th Cir. 2000).

That Plaintiffs did not prevail on all their initial claims is not reason to reduce Miller's fee award. The claims upon which Miller prevailed formed the core of her lawsuit and involved a common core of facts based on related legal theories that involved the same evidence and witnesses as the claims that were dismissed. As such, all of Miller's counsel's reasonably expended time is compensable.

## II.   THE LODESTAR AMOUNT FOR WORK ON THIS CASE SHOULD BE ADJUSTED UPWARD BY A FACTOR OF 2.0

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success, an enhanced award maybe justified." *Hensley*, 461 U.S. at 435. To determine whether an enhanced award is warranted, a court first looks to the "results obtained" from the litigation. *Id.* at 434. In other words, a plaintiff who achieves near complete results through litigation or settlement may be entitled to an enhancement of their lodestar. *Id.* Other facts the Court

may consider when considering the case for enhancement—known as the "Johnson factors"—include:

> (1) the time and labor involved; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 430, fn. 3. Because Miller obtained excellent results in this litigation, and several of the Johnson factors weigh in Miller's favor in this case, as set forth in further detail below, it is reasonable to apply a 2.0 multiplier to Miller's lodestar in awarding her attorneys' fees.

### A. The Risk Taken Supports a Significant Enhancement

By taking Miller's case on contingency, the attorneys had to restrict the number of other cases they could work on that would be compensated at an hourly rate. (Siegel Aff., ¶¶ 17, 21; Brunner Aff., ¶ 25.) From the beginning, the question of eventual victory for Miller was fully contingent. Miller's counsel took the risk of spending years on a case and receiving absolutely no compensation. (Siegel Aff., ¶¶ 17, 21.)

In addition, Miller's attorneys were required to make a significant outlay of costs and expenses in this case, with a years' long period of delay of payment. These factors support an enhanced award for Miller's attorneys. *See Perdue v. Kenny A.*, 559 U.S. 542, 556, 130 S. Ct. 1662, 1675 (2010) (an enhancement may be appropriate in case that involved a significant outlay of expenses in protracted litigation with a period of delay in

payment).

### B. Miller's Counsel Demonstrated Skills and Experience Critical to the Success of the Suit, and Excellent Results Were Obtained

Miller's attorneys had the skill required to try her case successfully. SYBM and FJM are experienced attorneys who have litigated hundreds of jury trials. SYBM brought to this case a specialized experience in Title IX litigation against college and university athletic departments. Siegel has 47 years of experience representing employees who have faced discrimination and retaliation. He is one of the preeminent civil rights attorneys in the United States. His colleagues, Brunner and Weills, are also experienced attorneys who have an extensive background interviewing witnesses, in deposition and trials. Mark has over 45 years of experience in general, aviation, employment, product liability, and commercial litigation. Other FMJ counsel key to the success of the case, including James, Van Dyck, Brimmer and Sall are also highly experienced attorneys as well.

Miller's counsel achieved excellent success for Miller—a unanimous jury verdict and front pay award of more than $4 million—and exposed gender discrimination by the University's athletic department, which favors a fee enhancement.

### C. Courts have Awarded High Fee Awards in Similar Cases

Miller's request for an enhancement is further supported by the final Johnson factor which involves consideration of fee awards in similar cases. *Hensley*, 461 U.S. at 430, fn. 3. Other employment cases in Minnesota have resulted in high fee awards. *See Ewald*, 2015 U.S. Dist. LEXIS 52540, at *71 (D. Minn. Apr. 13, 2015) (awarding

plaintiff attorneys' fees from the defendant in the amount of $1,773,719.05, and costs in the amount of $209,973.61, following plaintiff's success on her claims of unequal pay at trial in the amount of $270,594); *Zebeck v. Metris Cos.*, No. A07-0756, 2008 Minn. App. Unpub. LEXIS 608, 2008 WL 2168333, at *7 (Minn. Ct. App. May 27, 2008 (affirming attorneys' fee award of $11,563,454—which would have been approximately $1,538,271 under a traditional lodestar analysis—in a case involving enforcement of CEO's severance agreement).

### III. THE NON-TAXABLE COSTS CLAIMED BY MILLER'S ATTORNEYS ARE REASONABLE

Plaintiffs in Title IX cases are entitled to recover their litigation expenses and costs. 42 U.S.C. § 1988. The entitlement of a prevailing party in a lawsuit to recover its costs, other than attorney's fees, is governed by Rule 54(d)(1) of the Federal Rules of Civil Procedure. In relevant part, Rule 54(d)(1) provides that such costs "should be allowed to the prevailing party" except where federal statue, the rules of civil procedure, or a court order," provides otherwise. Fed. R. Civ. P. 54(d) (1). Courts routinely award prevailing parties nontaxable costs of the kind normally charged to clients by attorneys as part of the reasonable attorney's fee awarded. *Pinkham v. Camex, Inc.*, 84 F.3d 292, 294-95 (8th Cir. 1996) (holding the district court award of expenses for long distance fax and messenger and express mail as taxable costs was harmless error as they should have been included as part of the reasonable attorney's fee award); *see also Harris v. Chipotle Mexican Grill, Inc.*, No. 13-cv-1719 (SRN/SER), 2018 U.S. Dist. LEXIS 14359, at *49 (D. Minn. Jan. 29, 2018) ("Under Eighth Circuit precedent, plaintiffs may properly be

reimbursed for computerized legal research, expert witness fees, copying costs and travel.")

Miller's counsel incurred significant non-taxable costs during the over three years this case was in litigation. SYBM incurred $70,718.08 in necessary nontaxable costs to successfully litigate Miller's case, including costs for plaintiff's expert witness Donna Lopiano of $32,185, for cell phone imaging of Miller's phone as a result of Defendant's discovery requests in the amount of $4,457.89, for travel expenses of $34,075.19, and other costs necessary to the prosecution of the case. (Brunner Aff., ¶¶ 28-30, Ex. B.)

FMJ incurred nontaxable costs in the amount of $27,254.73 for motion fees, medical records charges, mediation and settlement conference costs, electronic research charges, service of process fees, courier services, telephone/conference call charges, document reproduction (trial enlargement) costs, and travel fees, including hotel, parking, mileage and meal charges to attend depositions, hearings, and trial. (Mark Decl., ¶ 10, Ex. A, pp. 154-160.) All of these costs were necessary incurred as part of the litigation and trial of this matter and are the type of costs FMJ routinely bills its clients, and are there for compensable.

## CONCLUSION

Miller, as the prevailing party, is legally entitled to recover her reasonable attorneys' fees and nontaxable costs. The hourly rates of Miller's counsel are reasonable in light of their significant experience and the risk of the continent nature of this litigation. Counsel's time was reasonably expended and necessary for the proper representation of Miller.

Further, Miller respectfully requests this court consider a 2.0 fee enhancement of the attorneys' fee award because of the risk taken, the difficulty of the case, counsels' demonstrated skills and specialty, the attorneys' inability to work on other matters, and the excellent results obtained. For these reasons, the Court should award $97,972.81 in non-taxable costs, and the lodestar amount for attorneys' fees of $2,434,143.94, with a 2.0 multiplier, for a total fee award of $4,868,287.88.

Respectfully submitted,

**FAFINSKI MARK & JOHNSON, P.A.**

Dated: April 5, 2019     By: s/ Donald Chance Mark, Jr.
Donald Chance Mark, Jr. (#0067659)
Tyler P. Brimmer (#0392700)
Flagship Corporate Center
775 Prairie Center Drive, Suite 400
Eden Prairie, MN 55344
Telephone: 952.995.9500
Facsimile: 952.995.9577
donald.mark@fmjlaw.com
tyler.brimmer@fmjlaw.com

**Attorneys for Plaintiff**

**and**

**SIEGEL, YEE, BRUNNER & MEHTA**
Dan Siegel, *pro hac vice*
Jane Brunner, *pro hac vice*
475 14th Street, Suite 500
Oakland, CA 94612
Telephone: 510.839.1200
dansiegel@siegelyee.com
janebrunner@siegelyee.com

**Attorneys *Pro Hac Vice* for Plaintiff**